# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CASE NO.: 1:22-CV-294

HARSHARAN KAUR SINGH, M.D. and
VOLKER REINHOLD AUGUST
NICKELEIT, M.D.,

                Plaintiffs,

v.

UNIVERSITY OF NORTH CAROLINA AT
CHAPEL HILL; UNIVERSITY OF NORTH
CAROLINA HEALTH CARE SYSTEM,
(d/b/a UNC HEALTH CARE); UNIVERSITY
OF NORTH CAROLINA SCHOOL OF
MEDICINE; JANET HADAR, MSN, in her
official capacity; THOMAS S. IVESTER,
M.D., individually and in his official capacity;
RUSSELL BROADDUS M.D., individually
and in his official capacity; LISA VOSS,
individually and in her official capacity;
DEREK V. HOAR, individually and in his
official capacity; HARVEY L. LINEBERRY,
PhD., individually and in his official capacity,

                Defendants.

# DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

    A.    The Parties .................................................................................... 2

    B.    UNC-CH School of Medicine's HR Department Receives and Reviews Complaints Against Plaintiffs ........................................ 3

    C.    UNC Hospitals Initiates a Corrective Action in Response to the HR Report ........................................................................................... 5

QUESTIONS PRESENTED ............................................................................ 7

STANDARD OF REVIEW ............................................................................. 8

ARGUMENT ................................................................................................... 8

I.    Plaintiffs' § 1983 Claim Against the University Defendants and the Individual Defendants in Their Official Capacities Should Be Dismissed. ........... 8

    A.    The University Defendants Are Immune from Suit Under § 1983. ........... 9

    B.    The Individual Defendants in Their Official Capacities Are Also Immune from Suit Under § 1983. ............................................... 12

II.    Plaintiffs Lack Standing and Their Claim Is Not Ripe. ........................................ 14

III.    Plaintiffs' § 1983 Claim Against the Individual Defendants in Their Individual Capacities Is Barred by Qualified Immunity ....................................... 17

    A.    Plaintiffs' Allegations Do Not Establish Violations of a Constitutional Right. ................................................................... 18

        1.    Plaintiffs Have No Protected Interest in Their Administrative Titles or Full Salary. ........................................................ 18

        2.    Plaintiffs Do Not Have a Right to a Pre-Suspension Hearing. ............... 20

    B.    Defendants Did Not Violate a Clearly-Established Right. ........................ 21

CONCLUSION ............................................................................................. 23

In support of their Motion to Dismiss under Rule 12(b)(1) Defendants The University of North Carolina at Chapel Hill, The University of North Carolina School of Medicine (both, the "UNC-CH"), The University of North Carolina Health Care System ("UNC Health") (UNC-CH and UNC Health together, the "University Defendants"), Janet Hadar, Thomas Ivester, Russell Broaddus, Lisa Voss, Derek Hoar, and Harvey Lineberry (collectively, the "Individual Defendants") (all, "Defendants") show the Court as follows:

## INTRODUCTION

Plaintiffs seek a preliminary injunction that would reinstate their clinical privileges. Plaintiffs lost those privileges after a committee of trained medical professionals reviewed a lengthy report and investigation and concluded Plaintiffs pose a threat to the health and safety of fellow employees and patients. While appealing that decision within UNC Health, Plaintiffs also filed this lawsuit. They plead just one claim under 42 U.S.C. § 1983 alleging Fourteenth Amendment procedural due process violations.

Before Plaintiffs may be heard on their injunction motion, they must show the Court has subject matter jurisdiction. It does not. First, the University Defendants and their employees named in their official capacities are immune from suit under § 1983. And Plaintiffs are not entitled to prospective injunctive relief against these employees under *Ex parte Young.* They have sued individuals that cannot provide such relief, and the relief Plaintiffs seek is backward looking—not prospective. Second, Plaintiffs have not presented a justiciable Article III controversy. They lack standing and their case is not ripe. Last, any damages claim against the Individual Defendants in their individual capacities is barred by qualified immunity.

1

Thus, Plaintiffs' Complaint should be dismissed, and the Court should deny Plaintiffs' preliminary injunction motion as moot. There is no jurisdiction to hear it.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

UNC-CH is a constituent institution of The University of North Carolina, "a public, multicampus university dedicated to the service of North Carolina and its people." N.C. Gen. Stat. §§ 116-1(b), 116-4; (*see also* ECF No. 1, "Compl." ¶14). UNC-CH has a School of Medicine. (Compl. ¶14). The North Carolina General Assembly established UNC Health in 1988. N.C. Gen. Stat. § 116-37(a). UNC Health is "governed and administered as an affiliated enterprise of The University of North Carolina." *Id*. § 116-37(a)(1). UNC Health governs "The University of North Carolina Hospitals at Chapel Hill and the clinical patient care programs established or maintained by the School of Medicine." *Id.* § 116-37(a)(3)-(4); (*see also* Compl. ¶15).

Defendant Janet Hadar is the President of UNC Hospitals. (Compl. ¶17). Defendant Dr. Thomas Ivester is UNC Hospitals' Chief Medical Officer ("CMO"). (*Id.* ¶18). Defendant Dr. Russell Broaddus is Chair of the School of Medicine's Department of Pathology. (*Id.* ¶19). Defendant Dr. Harvey Lineberry is the Associate Dean of Human Resources for the School of Medicine. (*Id.* ¶22). Defendants Lisa Voss and Derek Hoar work in the School of Medicine's Human Resources Office. (*Id.* ¶¶20-21).

Plaintiff Dr. Volker Nickeleit is a tenured professor at UNC-CH's School of Medicine. (Compl. ¶13). Plaintiff Dr. Harsharan Singh is also a tenured professor at the School of Medicine. (*Id.* ¶12). Plaintiffs work in the Department of Pathology. Their

2

subspeciality is nephropathology, which involves diagnosing kidney biopsies. (*Id.* ¶¶12-13, 44). UNC Hospitals granted Plaintiffs' clinical privileges, which allowed them to perform clinical work within UNC Hospitals. (Ivester Dec. Ex. 1 at Art. IV-V).[1] Nephropathology is "highly profitable" for the Department. (Compl. ¶¶44, 46).

## B. UNC-CH School of Medicine's HR Department Receives and Reviews Complaints Against Plaintiffs

In the fall of 2020, the School of Medicine's Human Resources Office received complaints that Plaintiffs violated UNC Health's Disruptive and Inappropriate Behavior Policy. (*Id.* ¶¶52-53). Voss and Hoar were tasked with conducting an administrative review. (ECF Nos. 3-3, 3-4, "HR Report" at 2).[2] They notified Plaintiffs of the complaints, informed them of the administrative review, and began their investigation. (*Id.* at 2).

As part of their review, Hoar and Voss interviewed 25 individuals, including Plaintiffs, and conducted multiple follow-up interviews. (*Id.* at 3). Many interviewees were nervous to participate out of fear of retaliation, bullying, or abuse from Plaintiffs. (*Id.* at 3-4). At least two individuals refused to participate because of such concerns. (*Id.*).

---

[1] Plaintiffs attached a former version of the UNC Hospitals Bylaws to their brief. (ECF No. 3-11). That version was last amended in July 2018. (*See id.*). The current Bylaws, last amended in May 2021, are attached here as Exhibit A. The Bylaws outline the process through which Plaintiffs' clinical privileges were recommended for revocation and through which Plaintiffs are appealing that recommendation. (Ivester Dec. Ex. 1 at 26-32 (Art. VI-VII)); *see also* N.C. Gen. Stat. § 116-37 *et seq*.

[2] Plaintiffs attached the HR Report at ECF Nos. 3-3 and 3-4. The former includes information about Singh and the latter includes information about Nickeleit. For brevity, Defendants will refer to both documents collectively as the HR Report, citing the CM/ECF pagination, which is the same for both documents.

3

On January 21, 2022, Voss and Hoar signed the completed HR Report, along with their supervisor, Lineberry. (*Id.* at 55).

The lengthy HR Report summarizes Voss and Hoar's robust investigation. It documents numerous instances of Plaintiffs' misconduct. Statements from interviewees show that Plaintiffs:

- bullied, abused, and intimidated co-workers, (*id.* at 18-20, 24-26, 28-31, 40-42);

- retaliated against fellows and staff, (*id.* at 31-37);

- were prone to screaming, swearing, and angry outbursts, (*id.* at 27-28); and

- treated physicians differently based on their age and gender, (*id.* at 6-7, 14-15).

Unfortunately, Plaintiffs' mistreatment of co-workers, residents, and others did not end there. One employee reported that Singh asked her to continue working work while that employee was suffering a miscarriage. (*Id.* at 22-24). Other employees stated that on multiple occasions Plaintiffs refused to let them leave during fire alarms. (*Id.* 20-24).

Plaintiffs' inappropriate conduct was not limited to interpersonal issues with co-workers but affected Plaintiffs' diagnostic work as well. Namely, interviewee statements show that Plaintiffs had a practice of reporting diagnoses to only their preferred (often older) attending physicians rather than communicating directly with patients' treating physicians, who had ordered the kidney biopsies in the first place. Plaintiffs' preferred attendings then had to report diagnoses to treating physicians secondhand, which impeded the effective communication of those important results. (*Id.* at 5-7, 14-15). Co-workers were afraid to challenge Plaintiffs' conduct even in a high-stakes environment where Plaintiffs' diagnostic work involved patients with kidney transplants. (Compl. ¶44).

In sum, the HR Report found that Plaintiffs violated UNC Health's Disruptive and Inappropriate Behavior Policy and recommended, among other things, that Plaintiffs "be suspended from having direct contact with Fellows, Residents, and learners." (HR Report at 54). After Broaddus received the HR Report, he revoked Plaintiffs' administrative titles, removing them from roles in the Department of Pathology where they were supervising others. (*See* Compl. ¶72). Plaintiffs' secondary administrative positions were at-will, and separate and apart from their positions as tenured full professors. (Ex. A, Compensation Plan at 5 (Section IV.D)); *see also* Ex. B, Academic Personnel Policies (explaining the difference between faculty rank and secondary administrative appointments)).[3]

### C. UNC Hospitals Initiates a Corrective Action in Response to the HR Report.

Dr. Ivester, as CMO for UNC Hospitals and Co-Chair of the Professional Executive Committee ("PEC"),[4] received a copy of the report at that same time as Broaddus. (Ivester Dec. ¶4.) The PEC met on January 26, 2022, to consider the HR Report and recommended that UNC Hospitals consider further action. (Ivester Dec. ¶5.) Based on the HR Report, Dr. Ivester, along with Dr. Jenny Boyd, Chair of the Credentialing Committee, requested that the Medical Staff Executive Committee ("MSEC") initiate a corrective action in accordance with Article VI of the Bylaws. (*Id*.) An Ad Hoc committee was subsequently formed on January 31, 2022. (*Id*. ¶7.)

---

[3] Both Exhibits A and B are excerpts of longer UNC-CH policies concerning compensation and academic personnel, respectively.

[4] The PEC is a joint committee between UNC-CH SOM and UNC Health charged with reviewing disruptive behavior investigations related to SOM faculty.

5

Both Plaintiffs met virtually with the Ad Hoc committee on February 10, 2022, for approximately one hour each, and both subsequently submitted documents that, in the words of Dr. Singh, "addressed, further clarified and refuted allegations and aspects discussed during" the meeting with the Ad Hoc committee. (ECF No. 3-2 ¶42.) The Ad Hoc committee submitted its report and recommendation to MSEC on March 3, 2022. (Ivester Dec. ¶10.) MSEC scheduled a special meeting for March 7, 2022. Plaintiffs were invited to address the committee in person or submit a written statement. (Ivester Dec. Exs. 7 and 8.) Both Plaintiffs chose to submit written statements, and provided them to MSEC on March 4, 2022. (Ivester Dec. ¶12, Exs. 9, 10 and 11.)

MSEC met on March 7, 2022, and voted to recommend revocation of Plaintiffs' clinical privileges. MSEC also voted to immediately revoke Plaintiffs' privileges due to concerns regarding the potential impact of Plaintiffs' conduct on the health and safety of UNC Hospitals' employees and patients. (Ivester Dec. ¶¶13, 15). That same day, Dr. Ivester emailed Plaintiffs to alert them to MSEC's decision. (*Id*. Exs. 12, 13.) On March 8, 2022, Dr. Ivester sent Plaintiffs a formal notice of corrective action (the "Corrective Action Notice"). (*Id*. Exs. 14, 16.) Both Plaintiffs acknowledged receipt of the Corrective Action Notice. (*Id*. Ex. 15.) On March 11, 2022, Dr. Nickeleit requested a hearing "in accordance with Section 2 and 4 of Article VII" of the Bylaws. (*Id*. Ex. 19.) Dr. Singh also made a formal request for hearing under Article VII. (*Id*. Ex. 20.).

With Plaintiffs no longer performing clinical work, on March 11, 2022, Broaddus notified Plaintiffs that their salaries were being reduced. (Compl. ¶93). The School of Medicine's Compensation Plan states that "Total Annual Salary may be decreased during

the course of the fiscal year if significant and unforeseen long-term reductions occur in a faculty member's funding sources." (Ex. A, Compensation Plan at 7). The reduction came from the fact that Plaintiffs were no longer generating revenue in support of their salaries through clinical work at UNC Hospital.

On March 28, 2022, Broaddus sent Plaintiffs formal notice of the salary change. That notice cited the specific part of the Compensation Plan—Section V.A.ii—which provided the basis for the reduction. (Ex. C, Broaddus Decl. at Exs. 1-2). Plaintiffs were also provided copies of the Guidelines to the Compensation Plan, which explained the process for requesting a review of the salary decision. Broaddus's letter informed Plaintiffs that they had until April 17, 2022, to request such a review. (*Id.*).

On April 13, 2022, Plaintiffs filed their Complaint, pleading just one claim under § 1983. (Compl. at 29). Plaintiffs have sued UNC-CH, the School of Medicine, UNC Health, Hadar in her official capacity, and Ivester, Broaddus, Voss, Hoar, and Lineberry in their individual and official capacities. (*Id.* at 1). Plaintiffs seek injunctive relief and compensatory and punitive damages. (*Id.* at 34). The same day Plaintiffs filed their Complaint, they also move for a temporary restraining order and preliminary injunction. (ECF No. 2).

## QUESTIONS PRESENTED

I.    Does the Court have subject matter jurisdiction?

    A. Are the University Defendants and the Individual Defendants named in their official capacities immune from Plaintiffs' § 1983 claim?

    B. Do any Individual Defendants fall within *Ex parte Young*'s exception for prospective injunctive relief?

Case 1:22-cv-00294-WO-JLW   Document 17   Filed 04/25/22   Page 9 of 27

C.  Is there a justiciable case or controversy under Article III?

    (1)   Do Plaintiffs have standing?

    (2)   Is Plaintiffs' claim ripe?

D.  Does qualified immunity preclude Plaintiffs' § 1983 claim against the Individual Defendants in their individual capacities?

## STANDARD OF REVIEW

The plaintiff bears the burden of showing the court has subject matter jurisdiction. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). "Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Without jurisdiction, courts cannot proceed to the merits, so jurisdiction must be resolved first. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998); *see also Florida v. Thomas*, 532 U.S. 774, 777 (2001) ("[W]e must first consider whether we have jurisdiction to decide this case."). When deciding questions of jurisdiction, courts "may consider evidence outside the pleadings." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## ARGUMENT

I.  **Plaintiffs' § 1983 Claim Against the University Defendants and the Individual Defendants in Their Official Capacities Should Be Dismissed.**

Section 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

8

> injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. The University Defendants are immune from §1983 claims. In addition, as state entities, they are not persons under § 1983. Because no § 1983 claim can be stated against the University Defendants, this claim also fails against the Individual Defendants sued in their official capacities.

### A. The University Defendants Are Immune from Suit Under § 1983.

Starting with the University Defendants' immunity, § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). State immunity remains intact unless a state waives it, or Congress shows a clear intent to abrogate it. *Id.* (discussing *Quern v. Jordan*, 440 U.S. 332, 337–45 (1979)). Neither has occurred here.[5]

In the context of § 1983 claims, North Carolina has not waived its sovereign immunity. *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1139 (4th Cir. 1990). And the State has not waived its Eleventh Amendment immunity. *Id.* There is also

---

[5] To be clear, the University Defendants' immunity protections are more than that expressly granted in the Eleventh Amendment. The University Defendants retain the sovereign immunity that existed before the Eleventh Amendment's ratification. *Alden v. Maine*, 527 U.S. 706, 713 (1999) ("States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today."); *see also Stewart v. North Carolina*, 393 F.3d 484, 488-90 & n.5 (4th Cir. 2005) ("[S]tate sovereign immunity was not created by the Eleventh Amendment, but rather predated it."). Thus, Plaintiffs' claim against the University Defendants is barred not just in federal court, but in all courts.

9

no applicable abrogation. *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 498 (M.D.N.C. 2002) (analyzing a § 1983 claim against UNC-CH and concluding "Congress has not overridden that immunity in any relevant area").

The University Defendants' immunity runs concurrently with that of the State of North Carolina. *McAdoo v. Univ. of N.C. at Chapel Hill*, 248 F. Supp. 3d 705, 710 (M.D.N.C. 2017); *see also Mayberry v. Dees*, 663 F.2d 502, 504 (4th Cir. 1981) (finding that East Carolina University "is a state agency"); *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 262 (4th Cir. 2005) ("Numerous courts have decided whether public state universities are 'arms of the state.' Almost universally, the answer has been in the affirmative.").

This Court, and others, regularly conclude that immunity bars § 1983 claims against UNC-CH. *Jennings*, 240 F. Supp. 2d at 498 ("[U]nder Pennhurst and the Eleventh Amendment, the § 1983 claims against UNC must be dismissed."); *Heckman v. Univ. of N.C. at Chapel Hill*, 19 F. Supp. 2d 468, 474 (M.D.N.C. 1998) ("In this instance, because Defendant is a state university in North Carolina, Defendant is entitled to enjoy the State's Eleventh Amendment immunity."); *Hoelzer v. Bd. of Governors of the Univ. of N.C.*, 2022 WL 973069, at *4 (M.D.N.C. Mar. 31, 2022) ("The Court finds that UNC Board and UNC-CH, a public university, are arms of the state and, therefore, Eleventh Amendment immunity bars Plaintiff's claims against them.").

The same is true for UNC Health. *See, e.g.*, *Smith v. UNC Health Care Sys.*, 2021 WL 1146936, at *4 (M.D.N.C. Mar. 25, 2021) ("UNC/HCS is an agency of the State of North Carolina created by statute, *see* N.C. Gen. Stat. § 116-37(a)(1), and therefore it is

10

entitled to Eleventh Amendment immunity when it otherwise applies."); *Diede v. UNC Healthcare*, 2018 WL 549430, at \*3 (E.D.N.C. Jan. 24, 2018) ("The court agrees that UNC Healthcare is an instrumentality of the state, and consequently is protected from liability by the Eleventh Amendment."); *Solomon v. Rex UNC Healthcare*, 2016 WL 8678003, at \*3-4 (E.D.N.C. Oct. 21, 2016) (holding that Eleventh Amendment barred § 1983 suit against UNC Health System), *report and recommendation adopted,* No. 2016 WL 6634876 (E.D.N.C. Nov. 8, 2016).

On immunity grounds alone, there is no doubt that Plaintiffs' § 1983 claim should be dismissed. Yet it also fails as a matter of statutory interpretation. Section 1983 creates a cause of action against "persons" acting under color of state law. The Supreme Court has determined "that a State is not a person" under § 1983. *Will*, 491 U.S. at 64.

Thus, on these grounds too, Plaintiffs' § 1983 claim should be dismissed. *See Huang*, 902 F.2d at 1139 n.6 ("NCSU, the NCSU governing board, the Board of Governors of the University of North Carolina, and the individual defendants in their official capacities [are ] alter egos of the state, they are not 'persons' within the meaning of § 1983." (citing *Will*, 491 U.S.58)); *Jennings*, 240 F. Supp. 2d at 498–99; *Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 761 (M.D.N.C. 2005) ("[*Will*] necessarily excludes UNCG from liability under § 1983."); *Googerdy v. N.C.a Agr. & Tech. State Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) ("[*Will*] necessarily excludes A & T, as an alter ego of the State of North Carolina, from liability under § 1983."); *Bartges v. Univ. of N.C. at Charlotte*, 908 F. Supp. 1312, 1332 (W.D.N.C. 1995), ("UNCC is not a person within the meaning of § 1983"), *aff'd,* 94 F.3d 641 (4th Cir. 1996).

11

## B. The Individual Defendants in Their Official Capacities Are Also Immune from Suit Under § 1983.

Plaintiffs' official capacity claims against the Individual Defendants fare no better. Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* As the Fourth Circuit explained in *Huang* "it is well settled that the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities." 902 F.2d at 1138; *see also Weathers v. Univ. of N.C. at Chapel Hill*, No. 2008 WL 5110952, at *6 (M.D.N.C. Dec. 4, 2008) ("[W]ith regard to [plaintiff]'s civil rights claims against UNC (a state entity) and the named defendants in their official capacities, [plaintiff] has neither offered evidence nor argument as to how she might be able to prevail on her claims in light of Eleventh Amendment's grant of immunity to defendants in such suits.").

Contrary to Plaintiffs' allegations, the exception to official immunity under *Ex parte Young*, 209 U.S. 123 (1908), does not apply. "Under *Ex parte Young*, private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018). This is a narrow exception to Eleventh Amendment immunity. "To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an *ongoing* violation of federal law." *Id.* The plaintiff bears the burden of showing that a violation is

12

ongoing. *Id.* at 355. Additionally, the plaintiff must show that the defendant has "some connection" to the conduct they want enjoined. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (quoting *Ex parte Young*, 209 U.S. at 157). Stated another way, there must be a "special relation" between the state official and the challenged conduct, showing "proximity to and responsibility for the challenged state action." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quotations omitted).

As applied here, the Individual Defendants do not have the authority to reinstate Plaintiffs' privileges—that can only occur through the hearing and appeals process. Equally important, Plaintiffs do not complain of ongoing procedural due process violations. The violation that Plaintiffs complain of—temporary suspension of their privileges without a hearing—is already complete. *See Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002) (finding that demotion without opportunity to be heard was not an "ongoing" violation under *Ex parte Young* because "the violation was not the demotion as such, but, instead, the fact that the demotion occurred without an adequate opportunity to be heard, either through an additional predisciplinary hearing or a sufficiently prompt post-disciplinary hearing.") *But see Coakley v. Welch*, 877 F.2d 304, 305, 307 n.2 (4th Cir. 1989) (holding that demand for reinstatement in §1983 action fell within *Ex parte Young* exception where plaintiff was denied *both* pre- and post-deprivation process).

Likewise, while Plaintiffs complain about the administrative review that led to the HR Report, that process ended in January 2021—there is nothing ongoing. (Compl. ¶¶68– 69; *see generally* HR Report). Plaintiffs have not identified a single action they want Voss,

13

Hoar, or Lineberry to take or cease in the future. There is no prospective relief to be entered when the administrative review process has long been complete. (Compl. ¶¶68).

Indeed, in asking that their privileges or titles or salary be *reinstated*, Plaintiffs acknowledge that these events have already occurred. Plaintiffs' barely mention, if at all, the ongoing process related to their appeal. If they had discussed that process, the Bylaws show that Plaintiffs will have an opportunity for a hearing where they can present evidence and examine witnesses with an attorney present, among other things. (Ivester Dec. Ex. 1 at 27-32 (Art. VII)).

In sum, Plaintiffs have not met their burden of showing entitlement to prospective injunctive relief under *Ex parte Young*, and thus there is no exception to the official capacity defendants' immunity. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018) ("[T]his exception does not apply when the alleged violation of federal law occurred entirely in the past." (quotation omitted)).

Accordingly, the § 1983 claim against Hadar, Ivester, Broaddus, Voss, Hoar, and Lineberry in their official capacities should be dismissed alongside the dismissal of UNC-CH, the School of Medicine, and UNC Health.

## II.   Plaintiffs Lack Standing and Their Claim Is Not Ripe.

Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing and ripeness both originate from Article III's case and controversy requirement. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

14

Standing is an "indispensable" part of every plaintiff's case. *Lujan*, 504 U.S. at 559. There are three components of standing. *Id.* at 560-61. First, there must be an "injury in fact" that is "concrete and particularized" and not "conjectural" or "hypothetical." *Id.* at 560. Second, the injury must "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). Third, it must be "likely"—not just "speculative"—"that the injury will be redressed by a favorable decision." *Id.* at 561. The plaintiff bears the burden on each element to invoke federal court jurisdiction. *Id.*

Ripeness concerns "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n. 10 (1975). A case is ripe when it is "not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quotation omitted).

The standing and ripeness inquiries often "boil down to the same question." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n. 5 (2014) (quotation omitted)). These doctrines have "developed in our case law to ensure that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016), *as revised* (May 24, 2016). Here, as is common, the standing and ripeness inquiries go hand in hand.

Plaintiffs' primary grievance is the loss of their clinical privileges. But neither the suspension of their privileges nor the recommended revocation is permanent. Plaintiffs concede they are appealing both decisions right now. (Compl. ¶¶94, 86). So there is nothing final here. Plaintiffs' claimed injury is not "concrete" when it remains dependent

15

on an ongoing appeals process. *Spokeo*, 578 U.S. at 340 ("A 'concrete' injury must be 'de facto'; that is, it must actually exist."). Plaintiffs have presented the prototypical "conjectural" and "hypothetical" type of injury that *Lujan* plainly rejects.

Indeed, federal courts "must wait until the case has taken on fixed and final shape so that we can see what legal issues we are deciding, and what effect our decision will have on the adversaries." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) (cleaned up). In *Trustgard*, for example, the Fourth Circuit found that the plaintiff's claimed injury was "of a hypothetical and contingent nature" when it "may not occur depending on the outcome of [a] state lawsuit." *Id.* The same reasoning applies here. Plaintiffs don't yet know whether their privileges will be permanently revoked. Attempting to evaluate that injury now invites an advisory opinion. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, (2021) ("[F]ederal courts do not issue advisory opinions. . . , federal courts instead decide only matters of a Judiciary Nature." (quotation omitted)).

Moreover, Plaintiffs' claimed injury is neither traceable to nor redressable by Defendants. *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755-57 (4th Cir. 2013) (finding no traceability or redressability where an injunction against the school board would provide no remedy absent permissions from the state court). Plaintiffs can point to no Individual Defendant and say they alone caused their pending privileges revocation. It is also not clear that any Individual Defendant could redress Plaintiffs' claimed injury.

As for ripeness, the facts alleged present a prime example of a claimed injury that has not yet occurred and remains contingent upon unknown, future events. *See Franks v. Ross*, 313 F.3d 184, 195 (4th Cir. 2002) ("This controversy was not ripe for judicial review

until the completion of the final step of the [permitting] process."); *Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 209 (4th Cir. 1992), *as amended* (Nov. 2, 1992) (finding case not ripe where "several contingencies separate [plaintiff] from a threat of final agency action"). Thus, Plaintiffs' claim is not ripe for adjudication.

Having not met the justiciability requirements of Article III, Plaintiffs' claim should be dismissed.

### III. Plaintiffs' § 1983 Claim Against the Individual Defendants in Their Individual Capacities Is Barred by Qualified Immunity.

Qualified immunity "is an *immunity from suit* rather than a mere defense to liability," and thus the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

This immunity applies unless: (1) "the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may consider the two prongs in any order. *Id.* at 236. A defendant is immune unless the court decides both questions in the plaintiff's favor. *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016).

17

**A. Plaintiffs' Allegations Do Not Establish Violations of a Constitutional Right.**

Plaintiffs have not alleged a violation of a constitutional right. "[P]rocedural due process appl[ies] only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). The range of interests protected "is not infinite." *Id.* For the "property interest [to be] subject to procedural due process protection," it must be "defined by a source independent of the Constitution, such as state law." *Huang*, 902 F.2d at 1141 (citing *Roth*, 408 U.S. at 577).

### 1. Plaintiffs Have No Protected Interest in Their Administrative Titles or Full Salary.

The Fourteenth Amendment does not encompass Plaintiffs' interest in their administrative titles or full salary. With regard to Plaintiffs' administrative titles, courts that have considered this issue have found no protectable interest. In *Crosby v. University of Kentucky*, the court considered whether the plaintiff's appointment as department chair was protected. 863 F.3d 545, 552 (6th Cir. 2017). The plaintiff had to show "a 'legitimate claim of entitlement' to his position" and not "a mere 'unilateral expectation' or 'abstract need' to continue undisturbed in his post." *Id.* (quoting Roth, 408 U.S. at 577). Applying the relevant university policies and state law, the court found no protectable interest. *Id.* at 554-55; *see also Garvie v. Jackson*, 845 F.2d 647, 651-52 (6th Cir. 1988) (qualified immunity applied where plaintiff had no property interest in department head title).

Similarly, the Fourteenth Amendment is not implicated when a tenured professor is transferred from one department to another. *Huang*, 902 F.2d at 1141-42 ("[W]e are unable

18

to conclude that the inter-departmental transfer resulted in an infringement of a constitutionally protected property interest."); *see also Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir. 1988) ("Transfers and reassignments have generally not been held to implicate a property interest. . . . [I]t would seem that this is the sort of administrative decision that is left completely to the administration's discretion.").

As applied here, Plaintiffs' administrative titles have nothing to do with their tenured faculty positions or "rank" titles—Plaintiffs remain full professors with tenure. (*See* Ex. B, Academic Personnel Policies). In contrast, Plaintiffs' administrative roles were at-will positions. Pursuant to the Compensation Plan, administrative roles, such as "Vice Chair, Division Chief, Medical Director, Program Director, etc. . . . are at-will and at the discretion of the Chair," among others. (Ex. A, Compensation Plan at 5 (Section IV.D)). The Plan further states that "Supplemental Pay" received for administrative work "must be discontinued when the specific duty that it recognizes ends." Notably, "Supplemental Pay is separate and distinct from "Annual Base Salary," which is "compensation for core duties as a faculty member." (*Id.* at 4-5 (Section IV.A, IV.D)). In North Carolina, "an employee-at-will does not have a property interest in continued employment." *Beck v. City of Durham*, 129 F. Supp. 2d 844, 850 (M.D.N.C. 2000). Thus, Plaintiffs had no protectable interest in their administrative titles.

As for compensation, once Plaintiffs' privileges were revoked, they were performing less work, and therefore entitled to less pay. (*See* Ex. C, Broaddus Decl. at Exs. 3-4). In *Stallworth v. Slaughter*, the court reasoned "common sense dictates" that a university employee should expect reduced pay for less work. 436 F. App'x 337, 342 (5th

19

Cir. 2011) (unpublished).  There, the court found that once the plaintiff was no longer vice chancellor, a salary reduction "did not impinge on any constitutionally protected property interest."  *Id.*

Plaintiffs did not have a protected interest in receiving the same pay for less work. If somehow such a right existed, Plaintiffs were afforded due process as to their salary reduction.  *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145–46 (4th Cir. 2018) ("The bottom line is that the deprivation of a protected interest warrants some sort of notice and opportunity to be heard.").  The March 28 letters show that Plaintiffs were: (i) notified of the salary change on March 11; (ii) provided formal notice on March 28, along with the Guidelines; and (iii) given 20 days to request a review by April 17. (Ex. C, Broaddus Decl. at Ex. 1-4).  This shows Plaintiffs were provided notice and an opportunity to be heard; thus, no due process violation occurred.

### 2.  *Plaintiffs Do Not Have a Right to a Pre-Suspension Hearing.*

Assuming that Plaintiffs have alleged a property interest in their clinical privileges, they do not have a constitutional right to a pre-suspension hearing. To the contrary, a summary or temporary suspension of clinical privileges without a hearing is proper so long as an adequate evidentiary hearing is provided in due course. *See Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) ("Due process does not require an extensive formal hearing prior to a summary suspension of medical privileges, so long as an adequate post-termination remedy exists."); *see also Everett v. Franciscan Sisters Healthcare, Inc.*, 882 F.2d 1383, 1387 (8th Cir. 1989); *Stratienko v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 402 F. App'x 990, 995 (6th Cir. 2010). These decisions are consistent with the Supreme

20

Court's recognition "that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

Moreover, Plaintiffs were afforded significant due process prior to MSEC's decision to suspend their privileges. As detailed in the Declaration of Thomas S. Ivester, Plaintiffs received prompt notice that corrective action had been requested, received notice of the formation of an Ad Hoc committee, met with the Ad Hoc committee, and submitted documents to the Ad Hoc committee. Plaintiffs were subsequently provided with a copy of the Ad Hoc committee's report and recommendation, informed of the date and time of MSEC's meeting to review that report, and provided the option to either speak with MSEC or submit a written statement, which they elected to do. This level of process is consistent with, if not in excess of, what courts have found sufficient in other cases involving pre-hearing suspensions of clinical privileges. *See Caine*, 943 F.2d at 1412 (finding no due process violation where physician "had the opportunity to defend himself twice before the Ad Hoc Investigating Committee prior to his temporary suspension."); *Darlak*, 814 F.2d at 1055 (finding no due process violation where suspension was preceded by informal investigation in which physician had opportunity to address allegations against him).

### B. Defendants Did Not Violate a Clearly-Established Right.

The Individual Defendants have no notice that their conduct allegedly violated a clearly established right. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). A clearly

21

established right is "settled law" that is "beyond debate." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). To the extent there is authority on this issue, it favors the Individual Defendants. Plaintiffs have pointed to nothing at this stage showing a clearly established right. Indeed, as set out above and discussed in greater detail in UNC Health's opposition to Plaintiffs' motion for preliminary injunction, the law is "clearly established" that a physician has no right to a full pre-deprivation hearing where adequate post-deprivation procedures exist.

Additionally, the Individual Defendants acted reasonably in following UNC-CH's policies when reducing Plaintiffs' salaries and revoking their titles. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (quotation omitted)). There is nothing that would suggest to the Individual Defendants that they would be violating Plaintiffs' rights by following these policies. The Compensation Plan explicitly permits such a reduction, and the Plan was followed. (Ex. A., Compensation Plan at 6 (Section V.A.ii)); *see also* Ex. C, Broaddus Decl. at Exs. 1-2, Guidelines). The Plan also shows Plaintiffs' administrative titles were at-will positions, creating no protected interest under North Carolina law. (*See* Ex. A, Compensation Plan at 5 (Section IV.D)).

Likewise, Dr. Ivester (the only UNC Hospitals employee named in his individual capacity) acted reasonably in following UNC Hospitals' Bylaws and in implementing MSEC's decision regarding Plaintiffs' credentials. As detailed above, there is no clearly-established right to a pre-suspension hearing; all due process requires is adequate post-deprivation remedies. Dr. Ivester followed the process set forth in the Bylaws—which

22

provides for just such a hearing—and at all times acted in accordance with established processes. Moreover, as described further in the preliminary injunction opposition, MSEC's decision was reasonable and justified under the circumstances.

Accordingly, qualified immunity precludes any damages claim.

## **CONCLUSION**

For all these reasons, Defendants respectfully request that the Court grant their Rule 12(b)(1) motion to dismiss.

Respectfully submitted, this the 25th day of April, 2022.

JOSHUA H. STEIN
Attorney General

/s/  *Zach Padget*
Zach Padget
Assistant Attorney General
NC State Bar No. 46610
zpadget@ncdoj.gov
North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorney for Defendants*
*UNC Chapel Hill, UNC School of*
*Medicine, Russell Broaddus, Lisa Voss,*
*Derek Hoar, and Harvey Lineberry*

 /s/ *Brent F. Powell*
Brent F. Powell (NCSB No. 41938)
Associate General Counsel
UNC Health
101 Manning Drive
Campus Box 7600
Medical Wing E
Chapel Hill, NC 29541
(984) 974-3042
brent.powell@unchealth.unc.edu

*Attorney for the University of North*
*Carolina Health Care System, Janet*
*Hadar, MSN, and Thomas S. Ivester, M.D.*

/s/  *Marla S. Bowman*
Marla S. Bowman
N.C. Bar No. 49097
marla_bowman@unc.edu
Office of University Counsel
University of North Carolina
at Chapel Hill
Campus Box # 9105

23

123 W. Franklin St., Suite 600A
Chapel Hill, NC 27599-9105
(919) 962-1219

*Attorney for Defendants*
*UNC Chapel Hill and UNC School of*
*Medicine*

24

## <u>CERTIFICATE OF WORD COUNT</u>

I certify that, in compliance with Local Rule 7.3(d), this brief is no more than 6,250 words according to the word processing software used to prepare this document.

This the 25th day of April, 2022.

/s/*Brent F. Powell*
Brent F. Powell
(NCSB No. 41938)
Associate General Counsel
UNC Health
101 Manning Drive
Campus Box 7600
Medical Wing E
Chapel Hill, NC 29541
(984) 974-3042
brent.powell@unchealth.unc.edu

25